IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAHAB ABBOUD,

Plaintiff,

v.

Case No.
Hon.

**DEMAND FOR JURY TRIAL**

CITY OF STERLING HEIGHTS, Sterling Heights Police Officer ARIEL SCHUETTE, and Sterling Heights Police Officer MAX KRETZSCHMAR, in their individual and official capacities, jointly and severally,

Defendants.

---

MICHAEL J. KEMNITZ, P.C.
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiff
500 Griswold, Suite 2400
Detroit, Michigan 48226
(313) 967-0100
michael@kemnitz.law

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES PLAINTIFF, YAHAB ABBOUD, by and through his undersigned counsel, and, by way of his Complaint against the above captioned defendants, states as follows:

## INTRODUCTION

This case involves officers of the Sterling Heights Police Department encountering a lawful paying guest of a hotel who was parked in a well-lit area of the hotel parking lot directly in front of the lobby, then immediately and unlawfully detaining and arresting the guest when he did not comply with orders that he was not required to follow, then heavily damaging his vehicle to try to effectuate the unlawful arrest of the guest, then ransacking the guest's vehicle in an unlawful search following his removal from the vehicle, then maliciously initiating the prosecution of the guest for, among other things, "loitering" in the parking lot of the hotel where he was a guest. Following a two-year legal battle, that guest, Plaintiff Yahab Abboud, was fully vindicated after all charges were dismissed.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because it arises under the Constitution and laws of the United States, including but not limited to 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the Michigan state law claims raised herein pursuant to 28 U.S.C. § 1367 because such claims are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all defendants reside in the Eastern District of Michigan and all events giving rise to the claims raised herein occurred in the Eastern District of Michigan.

## PARTIES

3. Plaintiff Yahab Abboud (hereinafter "Plaintiff") is, and was at all times relevant herein, a resident of Macomb County, Michigan and a citizen of the United States.

4. Defendant City of Sterling Heights is a municipal public corporation created and established under the Constitution, laws and statutes of the State of Michigan, located in the Sterling Heights, Michigan. For all times relevant hereto, Defendant City of Sterling Heights had supervision of and control of the Sterling Heights Police Department and all employees thereof, including Defendants Schuette and Kretzschmar, and was directly responsible for the creation, implementation and continuation of police training, policies, practices and/or customs.

5. Defendant Sterling Heights Police Officer Ariel Schuette, at all times relevant herein, was an officer with the Sterling Heights Police Department, in Sterling Heights, Michigan, and she was acting within the scope of her employment and authority as a law enforcement officer and under color of law.

Defendant Schuette is sued in her individual and official capacities. Upon information and belief, Defendant Schuette is a resident of Macomb County, Michigan.

6. Defendant Sterling Heights Police Officer Max Kretzschmar, at all times relevant herein, was an officer with the Sterling Heights Police Department, in Sterling Heights, Michigan, and he was acting within the scope of his employment and authority as a law enforcement officer and under color of law. Defendant Kretzschmar is sued in his individual and official capacities. Upon information and belief, Defendant Kretzschmar is a resident of Macomb County, Michigan.

7. Defendants Schuette and Kretzschmar were not acting in good faith, and were acting with malice, and/or were grossly negligent, when they engaged in the conduct described herein, and said Defendants did not believe that they were acting in good faith when they engaged in the conduct described herein, nor would a reasonable officer believe that they were acting in good faith if they engaged in the conduct Defendants engaged in herein.

## PLAINTIFF CHECKS INTO THE TRU HOTEL

8. On November 18, 2024, at approximately 11:00PM, Plaintiff, a resident of Sterling Heights, Michigan checked into the Tru Hotel by Hilton located at 36500 Van Dyke in Sterling Heights, Michigan.

9. Shortly before 2:00AM, after settling into his room, Plaintiff, a smoker, left his room and walked out to his car in the hotel parking lot to have a cigarette because his room, like all hotel rooms in Michigan, was a non-smoking room.

10. Plaintiff's vehicle was parked in a well-lit area of the hotel parking lot with other guest's vehicles and directly in front of the hotel lobby, in full view of the lobby clerk.

11. While smoking his cigarette, Plaintiff was on a phone call with his brother. Because it was a cool November night, Plaintiff started his car and let it run while he was on the phone smoking his cigarette in his lawfully parked car at the hotel where he was paying guest.

**DEFENDANT SCHUETTE ARRIVES IN THE PARKING LOT AND IMMEDIATELY DETAINS PLAINTIFF**

12. Shortly after Plaintiff entered his vehicle, Defendant Schuette, driving her Sterling Heights Police patrol car, entered the parking lot of the Tru Hotel and observed Plaintiff's vehicle parked in the well-lit area of the parking lot in front of the hotel lobby.

13. Immediately upon seeing Plaintiff's vehicle, Defendant Schuette ran Plaintiff's license plate through her in-car computer and learned that everything was proper with the vehicle and that there were no warrants or other flags for

Plaintiff, the registered owner of the vehicle. In other words, there was nothing suspicious whatsoever.

14. Despite the fact that there was no adverse information about Plaintiff or his vehicle, nor anything suspicious about Plaintiff's vehicle being lawfully parked for the few seconds that Defendant Schuette observed it in a well-lit area of the parking lot of a business that was open and actively conducting business, Defendant Schuette immediately decided to detain and question Plaintiff regarding his presence at the hotel.

15. To this end, Defendant Schuette pulled her patrol car behind Plaintiff's vehicle and shone her patrol car spotlight on Plaintiff's driver side window such that a reasonable person would not have felt free to leave, and Plaintiff did not feel free to leave. A car was parked in front of Plaintiff's vehicle preventing him from driving forward.

16. This is what it looked like from the dash camera of Defendant Schuette's patrol car when she pulled behind Plaintiff's vehicle.



17. This is what it looked like when looking back from Plaintiff's vehicle toward Defendant Schuette's patrol car with the spot light.




18. Despite the fact that there was no adverse information about Plaintiff or his vehicle, nor anything suspicious about Plaintiff's vehicle being lawfully parked for the few seconds that Defendant Schuette observed Plaintiff's vehicle in a well-lit area of the parking lot of a business that was open and actively conducting business, Defendant Schuette called for back-up from other officers before exiting her vehicle to confront Plaintiff, but never advised that back-up that Plaintiff was suspected of committing a crime, or that there was anything suspicious whatsoever about Plaintiff or his vehicle. Again, this was mere seconds after observing Plaintiff's vehicle.

19. Defendant Schuette exited her vehicle, approached Plaintiff's vehicle and asked him to roll down his window. As detailed more fully below, Defendant

Schuette openly admits that, at the time she approached Plaintiff's vehicle, there were no objectively observable facts that gave her reasonable suspicion that Plaintiff was committing a crime so as to justify an investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1, 34, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968), or a factually similar case in *People v. Prude*, 513 Mich. 377, 15 N.W.3d 249 (2024). Rather, as Defendant Schuette admits, she approached him simply out of "curiosity."

20. As a lawful paying guest at the hotel, who was doing absolutely nothing wrong, Plaintiff initially attempted to simply ignore Defendant Schuette when she approached his vehicle and asked him to roll down his window, as was his right:

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Police officers enjoy 'the liberty (again, possessed by every citizen) to address questions to other persons,' although 'ordinarily ***the person addressed has an equal right to ignore his interrogator*** and walk away.

*United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1876, 64 L. Ed. 2d 497 (1980). See also, *Florida v. Royer*, 460 U.S. 491, 497-498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983):

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen. . . ***The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may***

> ***go on his way***. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

21. In response to being ignored by Plaintiff, Defendant Schuette quickly escalated the encounter by: continuing to demand that Plaintiff roll down his window, which he did not do; by radioing for her back-up to "step it up" (meaning to hurry to the scene); and by ordering Plaintiff to put his hands on his steering wheel. As detailed more fully below, Defendant Schuette openly admits that Plaintiff was not free to leave during this time, and a reasonable person would not have felt free to leave, and Plaintiff did not feel free to leave.

22. At no time prior to rendering Plaintiff not free to leave did Defendant Schuette have reasonable suspicion, or even arguable reasonable suspicion, that Plaintiff was committing a crime. In fact, the only observations that Defendant Schuette made of Plaintiff prior to the arrival of her back-up (discussed below) was that he was holding a cell phone in his hand, that there may have been smoke in his vehicle (again, he was smoking a cigarette), and that he declined to roll down his window.

**<u>BACK-UP ARRIVES</u>**

23. Shortly after Defendant Schuette ordered Plaintiff to keep his hands on his steering wheel and radioed for her back-up to "step it up," Defendant Kretzschmar arrived on scene, at which time Defendant Schuette advised

Defendant Kretzschmar that Plaintiff was "refusing to roll the window down . . . so maybe you can get him to roll it down." Defendant Schuette did not advise Defendant Kretzschmar that Plaintiff was suspected of doing anything illegal, because there was no basis for any such suspicion and because Plaintiff was not, in fact, doing anything illegal.

24. Almost immediately after arriving on scene, Defendant Kretzschmar ordered Plaintiff to roll down his window. When Plaintiff asked why, Defendant Kretzschmar responded "because I'm telling you to."

## DEFENDANTS SCHUETTE AND KRETZSCHMAR TRY TO MANUFACTURE A REASON TO DETAIN PLAINTIFF

25. Because Plaintiff had not done anything to warrant being legally detained, Defendants Schuette and Kretzschmar pretended to observe alleged criminal infractions, and narrated those false observations for their body cameras, to give them the apparent justification to detain and/or arrest Plaintiff which they knew was lacking.

26. To this end, Defendant Schuette, upon seeing Plaintiff holding what was obviously a pack of Marlboro cigarettes in his hand, remarked "that looks like marijuana in his hand, so that's enough for a misdemeanor." No reasonable officer would have believed that the pack of Marlboro cigarettes in Plaintiff's hand was marijuana, and Defendant Schuette did not, in fact, believe it was actually marijuana in Plaintiff's hand.

27. Even if Defendant Schuette had believed that she observed marijuana in Plaintiff's hand, which she did not, Plaintiff's possession of marijuana would not have been illegal under Michigan law, as person's over 21 years of age, such as Plaintiff, are lawfully permitted to transport or possess 2.5 ounces of marijuana pursuant to MCL 333.27955(1)(a).

28. In like vein, Defendant Kretzschmar pretended to observe an open bottle of alcohol in Plaintiff's front passenger compartment, remarking "looks like he's got open intox too." At no time was there ever an open bottle of alcohol in Plaintiff's front passenger compartment, or anywhere else visible to Defendant Kretzschmar, and no reasonable officer would have believed that there was an open bottle of alcohol in Plaintiff's front passenger compartment, and Defendant Kretzschmar did not reasonably believe that he had observed an open bottle of alcohol.

**DEFENDANT KRETZSCHMAR FORMALLY ARRESTS PLAINTIFF**

29. After Plaintiff declined to open his door, roll down his window, or get out of his vehicle, as requested (again, he was not required to), Defendant Kretzschmar advised Plaintiff that he was "under arrest," though Plaintiff had already been unlawfully detained at that point. When Plaintiff asked what he was under arrest for, Defendant Kretzschmar advised that he was under arrest for "obstruction." Defendant Kretzschmar did not advise Plaintiff that he was under

arrest for open intoxicants or any marijuana related offense because Defendant Kretzschmar knew no open intoxicants or marijuana had been observed in Plaintiff's vehicle.

30. Plaintiff had not committed the offense of "obstruction," or any other offense, nor was there probable cause or reasonable suspicion, or even arguable probable cause or arguable reasonable suspicion, to believe that Plaintiff had committed the offense of "obstruction," or any other offense.

31. After Defendant Kretzschmar placed Plaintiff under arrest for "obstruction," Plaintiff continued his passive non-compliance in the face of Defendants Schuette's and Kretzschmar's repeated instruction to open his door, get out of the vehicle, and/or roll down his window, which he did not do and he was not required to, as Defendants Schuette's and Kretzschmar's actions were unlawful.

## **DEFENDANTS ATTEMPT TO REMOVE PLAINTIFF FROM HIS VEHICLE**

32. As Plaintiff continued his passive non-compliance with Defendants' demands, Defendants sought to forcibly extract Plaintiff from his vehicle. To this end Defendants Kretzschmar and Schuette both took turns attempting to break the windows on Plaintiff's vehicle, but Defendants were unsuccessful in fully breaking Plaintiff's windows because they were reinforced, though Defendants Kretzschmar

and Schuette caused significant damage to Plaintiff's vehicle attempting to extract Plaintiff therefrom.

33. Defendants Kretzschmar and Schuette further escalated the encounter by drawing their weapons and pointing them at Plaintiff.

**PLAINTIFF CALLS FOR HELP**

34. While Plaintiff began by simply trying to ignore Defendant Schuette, when Defendants Kretzschmar, Schuette, and other officers who arrived on scene, drew their guns on him, Plaintiff naturally feared for his life. Therefore, Plaintiff asked his brother, with whom he was still on the phone, to contact 911 and to advise someone of his treatment by the officers on scene.

35. At Plaintiff's request, Plaintiff's brother contacted 911 and advised that Plaintiff was detained by Defendants Kretzschmar, Schuette and other officers and that he was afraid of being wrongfully shot if he exited the vehicle. Records from this 911 call reflect that Plaintiff's brother advised that Plaintiff "wants to cooperate but is afraid he is going to be shot."

36. After other on-scene officers assured Plaintiff that he would not be harmed if he exited the vehicle, and after approximately 35 minutes from when Defendant Schuette first approached Plaintiff's vehicle and ordered him to keep his hands on his steering wheel, Plaintiff voluntarily exited his vehicle, whereupon officers immediately took him to the ground, whereupon Defendant Schuette

handcuffed him and he was led away from his vehicle and placed in a police vehicle.

37. As a result of Defendants Schuette and Kretzschmar's detention and arrest of Plaintiff, and/or at the direction of Defendants Schuette and Kretzschmar, Plaintiff was removed from the scene in a police patrol vehicle and jailed.

**THE RANSACKING OF PLAINTIFF'S VEHICLE**

38. After Plaintiff exited his vehicle, and after he had purportedly been arrested for "obstruction," restrained, handcuffed and removed from the vicinity of the vehicle, Defendants Schuette and Kretzschmar, and all officers on scene, searched every square inch of his vehicle without a warrant.

39. Since the arrest of Plaintiff was unlawful, no warrantless search of his vehicle could be justified by the search incident to arrest exception to the warrant requirement.

40. Even if Plaintiff's arrest had been lawful (it was not), Plaintiff was not within reaching distance of the passenger compartment of his vehicle at the time Defendants searched it, nor was there reason to believe that the vehicle contained evidence of the offense of arrest (Obstruction), such that a search incident to arrest would be permissible under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

41. Nor was the search of Plaintiff's vehicle justified by any other recognized exception to the warrant requirement of the Fourth Amendment to the United States Constitution. Rather, this was an absolute free-for-all, with every officer on scene, including Defendants Schuette and Kretzschmar, taking turns ransacking Plaintiff's vehicle at their whim.

42. As the unrestrained search of Plaintiff's vehicle worn on without the discovery of anything illegal, one officer remarked "this will be so stupid if there's nothing in this car . . . there better be something in this fucking car."

43. Eventually, one officer located an empty bottle of Remi Martin buried underneath various other items in the back seat area of the vehicle. This empty bottle was clearly not visible to Defendant Kretzschmar when he arrived on scene and remarked "looks like he's got open intox too," nor was it visible to any other officer prior to its discovery in the back seat area of Plaintiff's vehicle. Following Plaintiff's arrest, Defendant Schuette listed the Remi Martin bottle in her report as an "empty bottle of Remi martin."

44. At no point during the entire encounter with Plaintiff, from the moment Defendant Schuette pulled behind Plaintiff's vehicle, to the time he exited his vehicle and was taken to the ground approximately 35 minutes later, did Defendant Kretzschmar or Defendant Schuette, or any of the other Sterling Heights Police officers who were on scene, ever bother to walk the few steps from

Plaintiff's vehicle to the hotel lobby to inquire whether Plaintiff, who was parked right in front of the lobby of the hotel, was actually a guest at the hotel, as would be the reasonable inference, and all such officers had ample opportunity to so inquire of the hotel.

45. After Plaintiff had been arrested and removed from the scene, one of the on-scene officers entered the hotel lobby and finally inquired if Plaintiff was a guest, at which time the clerk advised that not only was Plaintiff a paying guest who checked-in that day, he stayed at the hotel frequently, approximately every other week.

46. After Plaintiff was removed from the scene and Defendants Schuette and Kretzschmar, and the other officers, had finished searching his vehicle, Defendants Schuette and Kretzschmar arranged for Plaintiff's vehicle to be towed from the scene and impounded.

47. During Defendants Schuette and Kretzschmar's interaction with Plaintiff at the Tru hotel, while Plaintiff was in his vehicle, other patrons of the hotel were coming and going from the hotel. This is not surprising since it is a hotel and is open for business 24 hours a day. In addition, several guests of the hotel and staff observed the spectacle created by Defendants Schuette and Kretzschmar's treatment of Plaintiff on scene.

**DEFENDANTS SCHUETTE AND KRETZSCHMAR FALSELY DOCUMENT THEIR ENCOUNTER WITH PLAINTIFF**

48. After the arrest of Plaintiff, Defendants Schuette and Kretzschmar made false representations and intentional material omissions in their police reports in an effort to provide a justification for the detention, investigation, arrest, and prosecution of Plaintiff, as well as a justification for the search of his vehicle, because they both knew no such justifications otherwise existed. The false representations in their reports were consistent with Defendants Schuette and Kretzschmar's false narration of events and observations for their body cameras.

49. In particular, Defendant Schuette falsely wrote in her police report that "Yahab had a marijuana package in his hand," which he did not, nor was any marijuana package recovered from Plaintiff's vehicle or Plaintiff's person. Defendant Schuette did, however, observe the pack of Marlboro cigarettes in Plaintiff's vehicle during her search of it, but she nevertheless reported, as fact, that Plaintiff had "a marijuana package in his hand." Defendant Schuette also intentionally omitted from her report the fact that Plaintiff was a lawful paying guest at the hotel, a fact she knew at the time she wrote her police report.

50. Defendant Kretzschmar falsely wrote in his report that he "could smell the odor of fresh burnt marijuana and see smoke within the vehicle" when he approached Plaintiff's vehicle. Defendant Kretzschmar could smell no such thing because Plaintiff was not smoking marijuana, and had not been smoking marijuana.

Moreover, in the approximately 14 hours of combined body camera and dash camera video of this incident, neither Defendant Kretzschmar, nor the multitude of other officers who were on scene, nearly all of whom entered Plaintiff's vehicle at some point, are ever captured on audio remarking about an alleged smell of marijuana. This is because there was no such smell. Defendant Kretzschmar falsely documented the smell of marijuana in his report because he knew his actions with Plaintiff were not justified and he was attempting to manufacture a justification for his treatment of Plaintiff.

51. Defendant Kretzschmar further falsely wrote in his police report "I could also see an open pint of alcohol." Defendant Kretzschmar never saw any open pint of alcohol in the vehicle. While an empty pint bottle of Remi Martin was eventually discovered buried in the back seat area of Plaintiff's vehicle, this empty bottle was never visible to Defendant Kretzschmar while he was outside of Plaintiff's vehicle, as it was in the location where it was discovered (buried behind the passenger seat on the floor underneath other items) the entire time, and Defendant Kretzschmar never observed the empty Remi Martin bottle in the vehicle. Defendant Kretzschmar falsely documented his alleged observation of a pint of alcohol in his report because he knew his actions with Plaintiff were not justified and he was attempting to manufacture a justification for his treatment of Plaintiff.

52. Like Defendant Schuette, Defendant Kretzschmar intentionally omitted from his report the fact that Plaintiff was a lawful paying guest at the hotel, a fact he knew at the time he wrote his police report.

## DEFENDANTS SCHUETTE AND KRETZSCHMAR INITIATE THE PROSECUTION OF PLAINTIFF IN THE ABSENCE OF PROBABLE CAUSE

53. On or about November 20, 2024, Defendants Schuette and Kretzschmar drafted and swore to, under oath, Sterling Heights Police Ticket No. SH301203 charging Plaintiff with the misdemeanor offenses of Loitering, in alleged violation of Sterling Heights Ordinance 35-17; Resisting an Officer, in alleged violation of Sterling Heights City Ordinance 35-19; and Open Intoxicants in a Motor Vehicle, in alleged violation of MCL § 257.624a(1).

54. Under Michigan law, the ticket issued by Defendants Schuette and Kretzschmar, which they swore to under oath, constitutes a sworn complaint necessary to initiate and maintain a criminal prosecution against an individual without any further review or approval by a prosecutor or court. See *City of Plymouth v. McIntosh*, 291 Mich. App. 152, 804 N.W.2d 859, 861 (2010).

55. The three offenses that Defendants Schuette and Kretzschmar initiated against Plaintiff were prosecuted under three separate, but related, case numbers, which were:

a. *People of the City of Sterling Heights v. Yahab Abboud*, Case No. 2024SH301203A – OM (Resisting Arrest)

b. *People of the City of Sterling Heights v. Yahab Abboud*, Case No. 2024SH301203B – OM (Open Intoxicants)

c. *People of the City of Sterling Heights v. Yahab Abboud*, Case No. 2024SH301203C – OM (Loitering)

56. Defendants Schuette and Kretzschmar lacked probable cause to believe that Plaintiff had committed any of the above offenses. The reasons that Defendants Schuette and Kretzschmar lacked probable cause to believe that Plaintiff had committed any of the listed offenses include, but are not limited to:

a. With respect to the loitering charge (Case No. 2024SH301203C – OM), Plaintiff was a lawful paying guest at the hotel where he was briefly parked in a well-lit area of the parking lot in full view of the hotel lobby, at a time when the hotel was actively conducting business, facts known to Defendants Schuette and Kretzschmar when they swore to the complaint charging Plaintiff with loitering. Further, as detailed more fully below, Officer Schuette openly acknowledged that there were no objectively observable facts that indicated Plaintiff was committing any crime, and further acknowledged that it would

not be unusual for a person to be parked where Plaintiff was parked and at the time Plaintiff was parked at the hotel.

b. With respect to the resisting charge (Case No. 2024SH301203A–OM), Plaintiff did not resist or otherwise disobey a lawful command from the police, but rather simply passively declined to comply with the unlawful commands of the police during an unlawful detention or arrest, as was his right under Michigan law. *People v. Moreno*, 491 Mich. 38, 814 N.W.2d 624 (2012).

c. With respect to the open intoxicant charge pursuant to MCL 257.624a (Case No. 2024SH301203B – OM), the bottle of Remi Martin was empty and, even if it was not empty, the statute requires that, if the open intoxicant was located in a vehicle in a parking lot, the vehicle must be ***moving*** before possession of the open intoxicant is illegal. An open intoxicant in a parked vehicle in a parking lot is simply not a crime in Michigan. At no time was Plaintiff's vehicle ever observed moving.

57. Had Defendants Schuette and Kretzschmar reasonably believed that there was probable cause to charge Plaintiff with the listed offenses, they would not have falsely documented the encounter in their police reports to try to supply that probable cause or otherwise justify their treatment of Plaintiff. Defendants

Schuette and Kretzschmar were aware of the false statements in the other's report at the time they swore to the citation charging Plaintiff with the above offenses.

58. Defendants Schuette and Kretzschmar initiated the criminal prosecution of Plaintiff with malice and/or for a purpose other than bringing Plaintiff to justice. First off, there was no "justice" to which Plaintiff needed to be brought because he had committed no offense. Defendants Schuette and Kretzschmar initiated the baseless prosecution of Plaintiff in the hopes that they could get Plaintiff convicted of some offense, *any offense*, to justify their actions against him that evening at the Tru hotel.

59. The fact that Defendants Schuette and Kretzschmar would swear to a citation charging Plaintiff with loitering in a well-lit area of a hotel parking lot, directly in front of, and in view of, the hotel lobby, where they knew, at the time they sworn to the citation, that he was a lawful regular guest at that hotel, and would likewise intentionally omit any reference to the fact that Plaintiff was a lawful guest at the hotel from their police reports supporting that complaint, speaks volumes to the malice and/or ulterior motive in their initiation of the prosecution of Plaintiff.

## **DEFENDANT SCHUETTE OPENLY ADMITS TO VIOLATING PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS**

60. On December 18, 2024, Plaintiff was arraigned in the 41A District Court in Sterling Heights, Michigan on the baseless charges initiated by

Defendants Schuette and Kretzschmar, and thus began his two-year odyssey to clear himself of these false charges.

61. During testimony in pre-trial state court proceedings, Defendant Schuette openly admitted that she detained Plaintiff in violation of his clearly established Fourth Amendment rights, beginning with *Terry v. Ohio* 392 U.S. 1 (1968), that an officer may not subject an individual to an investigative detention absent reasonable articulable suspicion that the individual has committed a crime.

62. In particular, Defendant Schuette testified that Plaintiff's Jeep was parked in a well-lit area of the parking lot and in an area of the parking lot where other patrons of the hotel were parked, and that there were other areas of the parking lot that were less well-lit where someone who wanted to conceal themselves could park.

63. Defendant Schuette further testified that Plaintiff did not make any effort to leave the parking lot once her presence in the parking lot was obvious, which she testified would have been suspicious if he had tried to do so.

64. Defendant Schuette testified that, immediately upon seeing Plaintiff's vehicle, she knew that she was going to approach him to talk to him and that, "within seconds" of seeing his Jeep, she ran his license plate through LEIN, and his plate came back clean and there were no warrants for Plaintiff in LEIN.

65. Defendant Schuette further testified that there was "certainly nothing illegal about [Plaintiff's] Jeep" when she observed it in the parking lot. Officer Schuette further testified that, while it was late at night when she observed Plaintiff's vehicle in the parking lot, the hotel was open 24-hours a day, it was a respectable hotel (not a pay-by-the-hour hotel), and that there were "actually people coming and going from [the] hotel."

66. Defendant Schuette testified that "it would not be odd for people to be frequenting a hotel at 2:00 in the morning," the time of night she observed Plaintiff, because "the reasons people use hotels are as varied as people's individual lives," and that is true for "Sterling Heights residents too" who may be frequenting the hotel. Indeed, Defendant Schuette testified that there may be all manner of reasons that a Sterling Heights resident, such as Plaintiff, would check into a Sterling Heights hotel. These include, she testified, instances where a couple have marital discord and one chooses to spend the night a hotel, a decision that Defendant Schuette testified should be encouraged, and one that she testified that she has advised couples to make in such situations.

67. Other reasons a Sterling Heights resident may lawfully be at a Sterling Heights hotel, Defendant Schuette acknowledged during her testimony, include where such residents simply want a stay-cation, where a couple or family will check into a hotel for a change of pace from everyday life, or where a Sterling

Heights resident may simply be coming to "hang out" with someone at the hotel, or instances where a Sterling Height resident may have had a problem with their home that prevented them from occupying it.[1]

68. The fact that Defendant Schuette would so readily acknowledge that it would not be unusual for a person to be frequenting a hotel at 2:00AM, the time that Plaintiff was briefly observed, is further evidence of her malice and/or ulterior motive in her initiation of the prosecution of Plaintiff for loitering because the ordinance under which she charged him requires, as one of the essential elements, that the person shall not "loiter in a place, at a time, or in a manner not usual for law-abiding individuals. . . " See Sterling Heights City Ordinance 35-17(A).

69. The hotel at which Plaintiff was parked was not in a high crime area such that Plaintiff's presence in front of the lobby, for the few seconds that Defendant Schuette observed him, would raise an alarm in a reasonable person or officer. Indeed, Defendant Schuette testified during the state court proceedings that she patrolled that parking lot on a daily basis and that the only other time ***in the entire year*** prior to her stop of Plaintiff that she ever had an incident at the hotel that required her to write a police report was in June of 2024 (five months before

[1] Sadly, this last example (problems with the physical home structure) arose during the pendency of the prosecution of Plaintiff when Plaintiff's home burned on January 14, 2026. Fortunately, no one was hurt, but Plaintiff and his family were forced to live in a Sterling Heights hotel for several months while his home was repaired. Of course, on many, many occasions over the course of those months that he was living at the hotel, Plaintiff, a smoker living in a non-smoking hotel room, did exactly what he did in the present case – sat in his car in the parking lot of the hotel where he was a paying guest and smoked a cigarette.

the interaction with Plaintiff), where an employee of the hotel called the police because his boyfriend took his phone from the front desk of the hotel, an incident that had nothing to do with anything illegal occurring in the parking lot.

70. Ultimately, during the state court proceedings, Defendant Schuette testified that she just wanted to "check out" Plaintiff out of "curiosity." Defendant Schuette candidly admitted that "there was no objectively observable fact that [she] saw that caused [her] reasonable suspicion that [Plaintiff] was actually committing a crime."

71. Having admitted that she had no reasonable suspicion based on any objectively observable fact that Plaintiff had been or was committing a crime, Defendant Schuette further admitted that she immediately detained Plaintiff such that he was not free to leave. In particular, Defendant Schuette testified that, from the moment she parked her patrol car behind Plaintiff's vehicle and shone her spotlight on him, and called for back-up before exiting her vehicle, Plaintiff was not free to leave because "if he had tried to leave, [she] would have stopped him."

72. Defendant Schuette further testified during the state court proceedings that she approached the driver's door of Plaintiff's vehicle and asked him to roll down his window, but Plaintiff did not roll it down, so, within 30 seconds of approaching Plaintiff's driver's door, she called for her back-up to "step it up." Defendant Schuette admitted that "certainly, at that point, [Plaintiff] wasn't free to

leave," even though the only thing he had done at that point was not roll down his window. Defendant Schuette testified that she then directed Plaintiff to "keep your hands on your steering wheel." Defendant Schuette testified that, obviously, Plaintiff was not free to leave at this point, just like he was not free to leave from the moment she got out of her car to approach Plaintiff.

## THE STATE TRIAL COURT RULES THAT DEFENDANT SCHUETTE VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS AND DISMISSES ALL CHARGES

73. Because Defendant Schuette so thoroughly and completely admitted to subjecting Plaintiff to an unconstitutional detention, unsupported by reasonable suspicion, that quickly became an arrest unsupported by probable cause, the Honorable Eric D. Shepherd, who presided over the prosecution of Plaintiff, ruled that she had seized him in violation of the Fourth Amendment, and suppressed all evidence that flowed from that illegal detention, including the empty Remi Martin bottle, and dismissed the open intoxicants offense (Case No. 2024SH301203B – OM).

74. Because Defendant Schuette so thoroughly and completely admitted to subjecting Plaintiff to an unconstitutional detention from the moment of her first contact with him in the parking lot, and because Defendant Schuette did, in fact subject Plaintiff to an unconstitutional detention, and because the lawfulness of police conduct is an element of any resisting or obstructing offense in Michigan,

Judge Shepherd found that all actions of the police that evening following that immediate unlawful detention were not lawful and could not form the basis of a resisting or obstructing charge. As a result, Judge Shepherd dismissed the resisting charge against Plaintiff (Case No. 2024SH301203A – OM).

75. Because Defendant Schuette so thoroughly and completely admitted that Plaintiff was doing absolutely nothing wrong in the parking lot for the few seconds that she observed him before subjecting him to an illegal detention, and because Defendant Schuette testified that there was nothing unusual about Plaintiff being parked in front of the lobby of the hotel where he was a guest, and because Plaintiff was a lawful paying guest at the hotel where he was parked, Judge Shepherd dismissed the loitering charge against Plaintiff (Case No. 2024SH301203C – OM).

76. Judge Shepherd's Order dismissing all charges against Plaintiff was entered on February 6, 2026.

**<u>THE STATE CIRCUIT COURT AFFIRMS THE TRIAL COURT</u>**

77. On March 19, 2026 the City of Sterling Heights appealed Judge Shepherd's dismissal of the charges against Plaintiff to the Honorable Kathryn A. Viviano of the Macomb County Circuit Court in Macomb County Circuit Court Case No. 2026-000244-AR.

78. On October 23, 2026, Judge Viviano of the Macomb County Circuit Court entered an Order denying the City of Sterling Heights's appeal of Judge Shepherd's, thus ending Plaintiff's two-year struggle to clear his name.

**COUNT 1**
***MONELL* LIABILITY**
**DEFENDANT CITY OF STERLING HEIGHTS**

79. Defendant City of Sterling Heights, through the below described policies, practices, or customs, created through a failure to train, deprived Plaintiff of his clearly established rights and privileges under the United States Constitution, including but not limited to those secured to them under the Fourth and Fourteenth Amendments.

80. In particular, Defendant City of Sterling Heights failed to adequately train the officers of the Sterling Heights Police Department, including but not limited to the Defendants Schuette and Kretzschmar, for the recurring situations that the officers of the Sterling Heights Police Department, including the Defendants Schuette and Kretzschmar, will routinely encounter in the course of their duties. The failures of this training include, but are not limited to:

a. Failing to train its officers, including Defendants Schuette and Kretzschmar, that individuals approached by police without reasonable suspicion or probable cause:

   i. May ignore the police and go about their business,

ii. May not be detained, or arrested for any offense, as a result of their refusal to cooperate with police, and;

iii. Must not be prevented from leaving the police encounter.

b. Failing to train its officers, including Defendants Schuette and Kretzschmar, that individuals in Michigan have the right to resist unlawful police conduct, including the right to decline to follow police requests or orders given during police encounters that violate the Fourth Amendment, and may not be arrested for resisting or obstructing a police officer for resisting a police officer, including by refusing to cooperate with the police, during a police encounter that violates the Fourth Amendment.

81. Through such failures to train, Defendant City of Sterling Heights created an obvious potential for violations of clearly established constitutional rights. That is, through the above failures to train, Defendant City of Sterling Heights failed to give its police officers the tools they need to constitutionally interact with citizens, and it was obvious that such failure to train would result in, and did result in, a policy, practice or custom of officers escalating consensual police encounters into encounters that violate the Fourth Amendment, and arresting individuals who act lawfully during such unconstitutionally escalated encounters,

including arresting individuals for declining to cooperate with police requests or orders when those individuals are not required to do so.

82. Through the above detailed policies, practices, customs, actions and/or failures, Defendant City of Sterling Heights was deliberately indifferent to the probability of citizens being deprived of their clearly established rights and privileges under the United States Constitution.

83. The above described actions of Defendants Schuette and Kretzschmar were a direct result of the above detailed policies, practices, and/or customs of Defendant City of Sterling Heights.

84. The fact that Defendants Schuette and Kretzschmar each individually and independently violated Plaintiff's clearly established Fourth Amendment rights in the same way demonstrates that the above failures to train by Defendant City of Sterling Heights have, in fact, created the above policies, practices or customs.

85. In particular, Defendant Schuette violated Plaintiff's clearly established Fourth Amendment rights when she approached Plaintiff in the absence of reasonable suspicion or probable cause, but quickly detained/seized him when he did not cooperate with her orders, which he was not required to, and then participated in his arrest for "obstruction" for his failure to comply with police orders during his unlawful detention.

86. Defendant Kretzschmar likewise encountered Plaintiff in the absence of reasonable suspicion or probable cause. The only information he had about Plaintiff when he arrived on scene and engaged with Plaintiff was that he was not rolling down his window, not that he was suspected of doing anything illegal. Defendant Kretzschmar then quickly arrested Plaintiff for Plaintiff's failure to obey Defendant Kretzschmar's orders, which Plaintiff was not required to obey.

87. As a direct and proximate result of Defendant City of Sterling Heights's above detailed policies, practices, customs, actions and/or failures, Plaintiff's clearly established constitutional rights under the United States Constitution, including but not limited to his Fourth and Fourteenth Amendment rights, were violated as set forth above.

88. As a direct and proximate result of Defendant City of Sterling Heights's above detailed policies, practices, customs, actions and/or failures, Plaintiff suffered damages, including but not limited to: deprivation of the rights secured to him by the United States Constitution, and the Amendments thereto, including but not limited to those rights secured by the Fourth and Fourteenth Amendments, physical damage to his vehicle, and mental and emotional suffering.

89. Defendant City of Sterling Heights is liable for exemplary and punitive damages, as well as Plaintiffs' attorney fees.

## COUNT 2
## 18 USC §1983
## FOURTH AMENDMENT VIOLATION
## UNLAWFUL SEIZURE OF PLAINTIFF
## DEFENDANTS SCHUETTE AND KRETZSCHMAR

90. At all times relevant herein, Plaintiff had clearly established rights under the Fourth and Fourteenth Amendments to United States Constitution, including but not limited to the right to be free from seizure as part of an investigative detention in the absence of reasonable suspicion to believe that he was committing a crime, and to be free from seizure in the form of an arrest in the absence of probable cause to believe he had committed a crime.

91. Defendants Schuette and Kretzschmar violated these clearly established constitutional rights of Plaintiff's through their above described conduct.

92. As a direct and proximate result of Defendants Schuette and Kretzschmar's unlawful seizure of Plaintiff, Plaintiff suffered damages, including but not limited to the loss of his constitutional rights, the loss of his liberty, and the related mental and emotional suffering, including the fright and shock from the manner in which Defendants Schuette and Kretzschmar effectuated the unlawful seizure of Plaintiff by pointing their firearms at him and violently damaging his vehicle to gain access to him.

93. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages, as well as Plaintiffs' attorney fees.

**COUNT 3**
**18 USC §1983**
**FOURTH AMENDMENT VIOLATION**
**UNLAWFUL SEARCH OF PLAINTIFF'S VEHICLE**
**DEFENDANTS SCHUETTE AND KRETZSCHMAR**

94. At all times relevant herein, Plaintiff had the clearly established right under the Fourth and Fourteenth Amendments to United States Constitution to be free from a warrantless search of his vehicle in the absence of a recognized exception to the warrant requirement, which was not present in this case.

95. Defendants Schuette and Kretzschmar violated these clearly established constitutional rights of Plaintiff through their above described conduct.

96. As a direct and proximate result of Defendants Schuette and Kretzschmar's unlawful search of Plaintiff's vehicle, Plaintiff suffered damages, including but not limited to the loss of his constitutional rights.

97. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages, as well as Plaintiffs' attorney fees.

## COUNT 4
## MALICIOUS PROSECUTION
## STATE LAW CLAIM
## DEFENDANTS SCHUETTE AND KRETZSCHMAR

98. On or about November 20, 2024, criminal proceedings were initiated against Plaintiff in the above referenced case numbers, wherein Plaintiff was charged with the above described offenses.

99. Defendants Schuette and Kretzschmar initiated the charges against Plaintiff in the above criminal proceedings by swearing to Ticket No. SH301203, as set forth above, and submitting same to the Court.

100. There was a lack of probable cause to charge Plaintiff with the above listed offense in the above listed case numbers.

101. The criminal proceedings terminated in Plaintiff's favor on or about October 23, 2026.

102. As a direct and proximate result of Defendants Schuette and Kretzschmar's malicious prosecution of Plaintiff for loitering, Plaintiff suffered damages, including but not limited to the mental and emotional suffering related to that prosecution, and the legal fees necessary to defend himself against that false charge.

103. Pursuant to MCL § 600.2907, Plaintiff is entitled to treble the amount the jury awards him for this claim of malicious prosecution.

104. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages.

**COUNT 5**
**FALSE ARREST**
**STATE LAW CLAIM**
**DEFENDANTS SCHUETTE AND KRETZSCHMAR**

105. Defendants Schuette and Kretzschmar each arrested or participated in the arrest of Plaintiff.

106. Defendants Schuette and Kretzschmar's arrest of Plaintiff was not supported by probable cause.

107. As a direct and proximate result of Defendant Schuette and Kretzschmar's false arrest of Plaintiff, Plaintiff suffered damages, including but not limited to the loss of his liberty and the humiliation and indignity of being publically arrested without probable cause.

108. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages.

**COUNT 6**
**FALSE IMPRISONMENT**
**STATE LAW CLAIM**
**DEFENDANTS SCHUETTE AND KRETZSCHMAR**

109. Defendants Schuette and Kretzschmar each committed an act with the intention of confining Plaintiff, as set forth above.

110. The respective acts of Defendants Schuette and Kretzschmar directly or indirectly resulted in Plaintiff's confinement.

111. Plaintiff was conscious of his confinement.

112. Neither Defendant Schuette nor Kretzschmar's confinement of Plaintiff was supported by probable cause.

113. As a direct and proximate result of Defendant Schuette and Kretzschmar's false imprisonment of Plaintiff, Plaintiff suffered damages, including but not limited to the loss of his liberty and the humiliation and indignity of being wrongfully imprisoned.

114. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages.

**COUNT 7**
**TRESPASS TO CHATTEL**
**STATE LAW CLAIM**
**DEFENDANTS SCHUETTE AND KRETZSCHMAR**

115. Through their above described actions, Defendants Schuette and Kretzschmar each dispossessed Plaintiff of his vehicle and/or intentionally and harmfully interfered with his vehicle.

116. As a direct and proximate result of Defendants Schuette and Kretzschmar's conduct, Plaintiff suffered damages, including but not limited to: the dispossession of his vehicle, extensive damage to his vehicle, and the cost to repair same.

117. Defendants Schuette and Kretzschmar are liable for exemplary and punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment against Defendants CITY OF STERLING HEIGHTS, ARIEL SCHUETTE and MAX KRETZSCHMAR, jointly and severally, in whatever amount a jury determines to be fair, reasonable and just, plus costs and attorney fees.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims raised herein.

Respectfully submitted,

/s/ *Michael Kemnitz*
MICHAEL J. KEMNITZ, P.C.
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiff
500 Griswold, Suite 2400
Detroit, Michigan 48226
(313) 967-0100
michael@kemnitz.law

Dated: November 17, 2026

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

YAHAB ABBOUD

**(b)** County of Residence of First Listed Plaintiff MACOMB
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Kemnitz, PC / Michael J. Kemnitz (P57227)
500 Griswold, Suite 2400 Detroit, Michigan, 48226
(313) 967-0100

## DEFENDANTS

CITY OF STERLING HEIGHTS, ARIEL SCHUETTE, and MAX KRETZSCHMAR

County of Residence of First Listed Defendant MACOMB
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ❒ 2 U.S. Government Defendant
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ❒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

**Other:**
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 485 Telephone Consumer Protection Act
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 USC 1983

Brief description of cause:
FOURTH AMENDMENT VIOLATION AND RELATED STATE LAW CLAIMS

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE
November 17, 2026

SIGNATURE OF ATTORNEY OF RECORD
s/Michael Kemnitz

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Print | Save As... | Reset